UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO. 5:09-cr-440 |
| | ) | |
| PLAINTIFF, | ) | CHIEF JUDGE SARA LIOI |
| | ) | |
| vs. | ) | |
| | ) | MEMORANDUM OPINION |
| | ) | AND ORDER |
| LAWRENCE TAYLOR, | ) | |
| | ) | |
| DEFENDANT. | ) | |

On July 22, 2010, defendant Lawrence Taylor ("Taylor") was sentenced to an aggregate custody term of 284 months,[1] following a plea of guilty to conspiracy to commit bank robbery, in violation of 18 U.S.C. § 371; brandishing and possessing a firearm during and in relation to a crime of violence, in violation of 18 U.S.C. §§ 924(c)(1)(A)(ii) and 2; and armed bank robbery, in violation of 18 U.S.C. §§ 2113(a) and 2. (Doc. No. 60 (Judgment); Minutes of Proceedings [non-document], 7/22/2010; *see* Doc. No. 53 (Plea Agreement); Minutes of Proceedings [non-document], 5/17/2010.) Taylor is serving his sentence at USP Terre Haute, with a minimum release date of September 22, 2031. (*See* https://www.bop.gov/inmateloc//, lasted visited 11/22/2024.)

The charges stem from a series of robberies and attempted robberies of local branches of two financial institutions: First Merit Bank and Chase Bank. In each robbery, Taylor directed his

---

[1] Specifically, Taylor received a custody term of 200 months for his robbery convictions (Counts 1 and 6) to be served consecutive to an 84-month mandatory minimum custody term for the weapons offense (Count 5). (Doc. No. 60, at 2 (All page number references herein are to the consecutive page numbers applied to each individual document by the Court's electronic filing system.); Doc. No. 61 (Transcript of Sentencing Hearing), at 24; Minutes of Proceedings [non-document], 7/22/2010.)

co-conspirator to carry out the robberies while he served as the getaway driver. During one of the robberies, Taylor supplied his co-conspirator with a firearm to facilitate the robbery. In the final robbery of a First Merit Bank branch, Taylor and his co-conspirator escalated their conduct by breaking into the home of a First Merit employee and holding her and her fiancée at gunpoint. (Final Presentence Investigation Report ("PSR") (Court Only) ¶¶ 1–22.)

Now before the Court is Taylor's motion to reduce his sentence pursuant to 18 U.S.C. § 3582(c)(2) and Amendment 821 to the United States Sentencing Guidelines. (Doc. No. 71 (Motion).) Plaintiff United States of America (the "government") opposes the motion. (Doc. No. 72 (Response).).

The Court employs a two-step approach to deciding whether to reduce a sentence based on a retroactive amendment to the federal sentencing guidelines. First, the Court must consider the scope of the reduction authorized by the amendment, and then it must consider whether such a reduction is warranted based on the factors set forth in 18 U.S.C. § 3353(a). *Dillon v. United States*, 560 U.S. 817, 826, 130 S. Ct. 2683, 177 L. Ed. 2d 271 (2010) (citing § 3582(c)(2)).

Taylor moves for a reduction in the term of imprisonment imposed for the robbery convictions based on a guideline sentencing range that has subsequently been lowered and made retroactive by the United States Sentencing Commission pursuant to 28 U.S.C. § 994(o). Specifically, he argues that he is eligible for a reduced sentence under Amendment 821, Part A, which affected the sentencing guidelines' treatment of offenses committed while under a criminal justice sentence. (*See* Doc. No. 71, at 1.) Part A of Amendment 821, which now appears in the guidelines at § 4A1.1(e), limits the criminal history impact of "status points," decreasing them by 1 point for individuals with 7 or more criminal history points and eliminating status points for

those with 6 or fewer criminal history points. *See* U.S.S.G. § 4A1.1(e). The Amendment was given retroactive effect, provided that any order reducing a term of imprisonment based on retroactive application of Amendment 821 have an effective date of February 1, 2024, or later. *See* § 1B1.10(e)(2) (Nov. 1, 2023).

At the time of sentencing, the Court calculated Taylor's base offense level for the bank robbery convictions to be 20. (*See* Doc. No. 61, at 9; *see also* PSR ¶ 46.) After the appropriate adjustments were applied—a 2-level increase because the property of a financial institution was taken; a 5-level increase because a firearm was brandished or possessed during the commission of the offenses; a 4-level increase because Taylor and his accomplice abducted a bank employee and her finance; a 2-level increase because the offenses involved a carjacking; and a 3-level decrease for acceptance of responsibility—the result was a total offense level of 30. (Doc. No. 61, at 9–10.) In deference to the parties' plea agreement, the Court agreed not to impose an additional 2-level increase for Taylor's role as a leader and/or organizer. (Doc. No. 61, at 4, 10; *see also* PSR ¶ 59 (showing a total offense level of 32).)

Taylor had prior adult convictions for drug abuse, possession of cocaine, aggravated menacing, having a weapon while under a disability, and intimidation of a juvenile crime victim, which collectively scored 11 criminal history points. (*See* Doc. No. 61, at 10; *see also* PSR ¶¶ 63–65, 67, 69–72.) Two more points were added because Taylor was under a criminal justice sentence at the time of the instant offenses. (*See* Doc. No. 61, at 10; *see also* PSR ¶ 73.) With a total of 13 criminal history points, Taylor was a criminal history category VI. (*See* Doc. No. 61, at 10; *see also* PSR ¶ 74.) The advisory guideline range at offense level 30, criminal history category VI, was 168 to 210 months for Counts 1 and 6. (Doc. No. 60; *see* Doc. No. 61, at 10.) For Count 5, the

mandatory minimum sentence was 84 months to be served consecutive to any other sentence. (Doc. No. 61, at 11; *see also* PSR ¶ 107) The Court imposed a within-guideline aggregate custody sentence of 284 months. (Doc. No. 60; *see* Doc. No. 61, at 24.)[2]

In his motion, Taylor requests that the Court reduce his sentence on Counts 1 and 6, based on the amended guideline range applicable for these counts following the changes made to "status points" under Part A of Amendment 821. (Doc. No. 71, at 1.) Under the Amendment, because Taylor had 7 or more criminal history points, his "status points" would be reduced by one, resulting in a total criminal history score of 12, which correlates to a criminal history category V. With a total offense level of 30 and a criminal history category of V, his amended sentencing guideline range is 151 to 188 months.[3]

The government concedes that Taylor is eligible for a sentence reduction under Part A. It, nevertheless, urges the Court to exercise its discretion in denying Taylor's motion based on the sentencing factors set forth at 18 U.S.C. § 3553(a). (Doc. No. 72, at 3.)

The Court agrees with the parties that Taylor is eligible for consideration of a sentence reduction under Part A. *See* U.S.S.G. § 1B1.10. Having concluded the amended guidelines range would have been applicable to Taylor had the Amendment been in effect at the time of sentencing,

---

[2] In imposing sentence, the Court observed: "in light of the seriousness of the present offenses, coupled with [Taylor's] prior record, and in order to protect the public from further crimes by this defendant, and particularly [given] what appears to be crimes escalated into more and more violence, and I think that was . . . illustrated by the information related as to how one of the victims felt in this case and how she was traumatized by defendant's actions, the Court finds that a sentence at the high end of the guideline range is warranted to affect the purpose of sentencing." (Doc. No. 61, at 23.)

[3] The government erroneously states that Taylor's amended advisory guideline range for Counts 1 and 6 would be 188 to 235 months, relying on a total offense level of 32 and criminal history category of V. (Doc. No. 71, at 3.) But at the sentencing hearing, the government conceded that the evidence regarding Taylor's leadership role was ambiguous and that the parties "negotiated that away[.]" (Doc. No. 61, at 4.) In the end, the Court agreed to honor the parties' plea agreement and forego applying an additional 2-level increase for leadership/organizer role in the criminal offenses, making the total offense level for Counts 1 and 6 a 30. (Doc. No. 61, at 4; *see* Doc. No. 61, at 4; Statement of Reasons (Court Only).)

the Court proceeds to the second step of the analysis and considers whether such a reduction is warranted based on the factors set forth in § 3553(a). *Dillon*, 560 U.S. at 826 (citing § 3582(c)(2)).

Subject to the limits set forth in U.S.S.G. § 1B1.10(b), a court may consider all pertinent information in applying the § 3553(a) factors and determining whether and by how much to reduce a defendant's sentence. *Dillon*, 560 U.S. at 821–22; *see United States v. Sherwood*, 986 F.3d 951, 954 (6th Cir. 2021) (citing 18 U.S.C. § 3553(a) and directing district courts to consider all relevant statutory sentencing factors). Section 3553(a), in addition to requiring consideration of the applicable guidelines and policy statements of the Sentencing Commission, requires the sentencing judge to consider the nature and circumstances of the offense and the history and characteristics of the defendant; and the need for the sentence imposed (1) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (2) to afford adequate deterrence to criminal conduct; (3) to protect the public from future crimes of the defendant; (4) to provide the defendant with needed educational or vocation training, medical care, or other correctional treatment in the most effective manner; and (5) the kinds of sentences available. *See* 18 U.S.C. § 3553(a).

Application note 1(B)(ii) directs that "[t]he court shall consider the nature and seriousness of the danger to any person or the community that may be posed by a reduction in the defendant's term of imprisonment[.]" U.S.S.G. § 1B1.10 app. n. 1(B)(ii). Application note 1(B)(iii) further directs that "[t]he court may consider post-sentencing conduct of the defendant that occurred after the imposition of the original term of imprisonment[.]" *Id*. app. n. 1(B)(iii).

The instant armed robberies were serious and dangerous and continue to warrant a significant sentence. These crimes were made all the more dangerous by the brandishing of

5

weapons and the abduction at gunpoint of a bank employee and her fiancée. And, unfortunately, these dangerous acts were consistent with a violent criminal history that includes convictions for aggravated menacing, intimidation of a juvenile crime victim, aggravated burglary, aggravated robbery, and disorderly conduct, as well as drug convictions and having a weapon while under a disability. (PSR at 13–15.) Additionally, Taylor has repeatedly failed to complete periods of supervision successfully. (*Id*. at 12–15.) Without question, Taylor's criminal history reflects a proclivity for drugs, weapons, violence, and an unwillingness or inability to comply with the terms of his supervision. Moreover, prior sanctions—including periods of incarceration—have failed to impress upon him the need to control his behavior to comply with the law.

In fact, he appears unable or unwilling to curb his behavior even in the controlled environment of a federal prison. Taylor's Inmate Discipline Data shows more than 40 rules infractions, including multiple instances of refusing to obey orders, multiple instances of being insolent to staff members, multiple instances of threating bodily harm, multiple instances of assaultive behavior, multiple instances of possessing dangerous weapons, multiple instances of possessing unauthorized items, multiple instances of destroying property, multiple instances of refusing work assignments, and multiple instances of fighting with others, with some rules violations occurring as recently as less than two months before the filing of the present motion. (Doc. No. 72-1 (Disciplinary Records).) Most alarming, however, is the fact that these same records demonstrate that Taylor was disciplined for killing his cellmate with a homemade knife. (*Id*. at 7–8.) It is evident that Taylor remains dangerous and would be unlikely to abide by any terms of release the Court may set.

As it did at the time of sentencing, the Court has taken into consideration all of the §

3553(a) sentencing factors, and it has also considered Taylor's disturbing post-judgment prison disciplinary record. In doing so, the Court finds that it is in agreement with the government that Taylor would be a danger to others and to the community if released. Additionally, for the same reasons, the Court finds a reduction of his sentence would undermine the need for the sentence imposed to reflect the seriousness of the offenses, promote respect for the law, provide just punishment for the offenses, and afford adequate deterrence.

For the foregoing reasons, Taylor's motion to reduce his sentence (Doc. No. 71) is denied.

**IT IS SO ORDERED**.

Dated: December 11, 2024

**HONORABLE SARA LIOI**
**CHIEF JUDGE**
**UNITED STATES DISTRICT COURT**